NOTICE
Decision filed 12/26/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230678-U

NO. 5-23-0678

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* DECLYN E., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | De Witt County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-JA-11 |
| | ) | |
| Dezerae B., | ) | Honorable |
| | ) | Karle E. Koritz, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where respondent admittedly failed to comply with her service plan and where evidence showed that the minor was doing well in his foster placement, there is no reasonably meritorious argument that the circuit court erred in finding her an unfit parent and terminating her parental rights to her son.  Thus, we grant respondent's appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2    Respondent, Dezerae B., appeals the circuit court's orders finding her an unfit parent and terminating her parental rights to her son, Declyn E.  Her appointed appellate counsel has concluded that there is no reasonably meritorious argument that the court erred in either respect.  Accordingly, he has filed a motion pursuant to *Anders v. California*, 386 U.S. 738 (1967), to withdraw as counsel, along with a supporting memorandum.  He has informed respondent of his

1

motion. This court has given her ample opportunity to file a response, but she has not done so. After considering the record on appeal and counsel's motion and memorandum in support, we agree that this appeal presents no meritorious issues. Accordingly, we grant counsel's motion and affirm the circuit court's orders.

¶ 3                              BACKGROUND

¶ 4     On June 27, 2022, the Department of Children and Family Services (DCFS) took protective custody of Declyn. The following day, the State filed a petition for adjudication of wardship, alleging that he was neglected because his blood, urine, or meconium contained methamphetamine, amphetamine, and cannabinoids, and because his environment was injurious to his welfare due to respondent testing positive for two or more of those substances five times between April and June 2022, and failing to appear for a drug screen.

¶ 5     At a shelter care hearing, the circuit court found probable cause to believe that the minor was neglected, and an immediate and urgent necessity to place him in DCFS custody, which it did. At an adjudicatory hearing in August 2022, both parents admitted the petition's allegations. Accordingly, the court found a factual basis for those allegations.

¶ 6     At a permanency review hearing on February 9, 2023, both parents signed final and irrevocable consents to Declyn's adoption by Dezerae's mother, Pamela Dyer. Thus, the court changed the permanency goal to adoption. However, by the time of the next review hearing, on March 9, Declyn had been removed from Dyer's custody. The court deemed the consents void and changed the permanency goal to "return home pending status."

¶ 7     On May 4, 2023, the State petitioned to terminate both parents' rights, alleging, with regard to respondent, that she was unfit for failure, during the nine months from August 2, 2022, to May 2, 2023, to make reasonable efforts to correct the conditions that led to Declyn's removal from her

home, and for failing, during the same period, to make reasonable progress toward his return.  At a subsequent hearing, the court changed the permanency goal to substitute care pending termination of parental rights.

¶ 8      At the fitness hearing, respondent testified that, after she admitted the allegations of neglect, her caseworker formulated a service plan with her.  The plan required her to obtain a substance-abuse assessment and to follow any recommended treatment.  She did obtain an assessment and had been attending Alcoholics Anonymous meetings regularly, but she did not follow up on treatment recommended by the assessment and did not know why she had not done so.

¶ 9      The plan also required her to call daily, Monday through Friday, to arrange random drug screens, which she initially said that she did not do.  However, she later said that she thought she and her mother had called, using her mother's phone.  She admitted that, although the service plan required her to remain sober, she had used cannabis and methamphetamines an average of once or twice weekly during the relevant nine-month period.

¶ 10     Respondent further testified that, during the relevant period, she had attended all scheduled visits with Declyn and had demonstrated appropriate parenting skills.  However, contrary to the requirements of the service plan, she had never obtained stable housing, instead "bouncing" among her mother's house and those of various friends.  Accordingly, she was unable to keep the caseworker informed of her living arrangements and was unable to comply with service plan requirements to keep a clean, stable home and to allow the caseworker to visit.

¶ 11     She was unable to provide monthly verification of employment because she had no employment.  She had applied to four places.  However, background checks prevented her from being hired by two of them, and she did not hear from the other two.  Since she had no income

during the period, she also did not comply with the service plan's requirement that she demonstrate appropriate budgeting skills to assure payment of her bills. She did not meet with her caseworker at least monthly, as required, and had no reason for not doing so.

¶ 12    The service plan required her to obtain a mental health assessment within 90 days. Because she had not obtained an assessment, she had also not engaged in any mental health treatment that might have been recommended.

¶ 13    Alissa Baertsch, respondent's initial caseworker, testified that respondent consistently attended visits with Declyn and behaved appropriately. She signed consents for information on substance abuse, domestic violence, and mental health services, but did not follow through with services.

¶ 14    Emily Hartman testified that she succeeded Baertsch as respondent's caseworker, from December 2022 through the present. During the period from December 2022 through May 2023, respondent was required to call for random drug screens each week but never did. From February onward, after Declyn's placement was changed, Hartman talked to her weekly about the need to do so. Respondent made all scheduled visits but one and behaved appropriately.

¶ 15    According to Hartman, Declyn had been with Pam Dyer until February, when he was placed first in a respite caregiver's home, then in a traditional foster home. These changes followed a hotline report that both respondent and Dennis (Declyn's father) were living with Dyer and the discovery that Declyn had been left unsupervised with them.

¶ 16    The court found respondent unfit with regard to both counts of the petition. After a brief recess, the court convened a best interests hearing. It took judicial notice of the best interest report, which confirmed that respondent "is always attentive to Declyn and engages with him." Declyn, who was then 16 months old, was "happy" in his foster home and enjoyed walking around and

4

being independent. He had chronic ear infections and qualified for tubes being placed in his ears to drain fluid, and surgery was to be scheduled in upcoming months. He attended daycare and was "thriving in his environment." He was strongly attached to his foster mother. The agency had no concerns about his placement with the foster mother, who was meeting his needs and who hoped to adopt him. The report concluded it was in Declyn's best interest that parental rights be terminated.

¶ 17    Hartman, who wrote the report, testified that, in June 2023, respondent had undergone a substance-abuse assessment at Heritage Behavioral Health. However, all Hartman had received was a letter from the evaluator confirming the completion of the evaluation. She had not received the assessment itself or any recommendations. Respondent had not undergone a mental health evaluation. She also apparently continued to lack stable housing. At the same time, she continued to be attentive and engaging with Declyn during her visits with him, which were ordinarily for two hours. Hartman confirmed the foster mother's desire to adopt Declyn and the bond between them. Declyn appeared to her to be happy and well provided for, and she had no concerns about his placement there.

¶ 18    Dyer testified that she cared for Declyn from his birth until February 2023. Declyn was removed from her care in February, but Dyer was appealing. Although the appeals had been delayed for various reasons, she intended to continue with the process in the hope of eventually adopting Declyn.

¶ 19    Respondent's counsel argued that Dyer had provided for Declyn's needs for the first 11 months of his life and, but for a single reported incident of unsupervised contact between Declyn and the parents, would have continued to do so. The court noted that it was not its function to select a particular placement for the minor. Rather, it had only to decide whether terminating the

parents' rights was in Declyn's best interest. Noting Declyn's need for stability, it found that, although Declyn and respondent loved each other, the termination of both parents' rights was in his best interest. Respondent timely appeals.

¶ 20                                     ANALYSIS

¶ 21    Counsel concludes that there is no reasonably meritorious argument that the circuit court erred by finding respondent an unfit parent or terminating her parental rights. We agree.

¶ 22    A proceeding to terminate parental rights occurs in two stages. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). First, the State must prove, by clear and convincing evidence, that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2020). Each statutory ground is independent so that if one is established, the court's finding of unfitness can be affirmed. *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007).

¶ 23    Here, respondent herself testified that she failed to comply with numerous service-plan directives. She did attend visitations regularly and behaved appropriately. She also completed some basic tasks such as signing consents and obtaining evaluations. However, within the relevant nine-month period, she never followed through on any services. She conceded that she continued to use methamphetamine and marijuana regularly throughout the nine months. She did not consistently maintain contact with her caseworker. Nor did she obtain stable housing, instead "bouncing" around between various friends' homes. Baertsch and Hartman confirmed respondent's lack of compliance with these directives.

¶ 24    Overall, the court's finding that respondent failed to make reasonable efforts or reasonable progress was supported by the evidence. While she attended visitations and accomplished some basic tasks, she failed to comply with the most substantive requirements of the service plan

6

including maintaining sobriety and obtaining drug-abuse and mental health treatment. In most cases, she admitted that she had no good reason for not doing so. She apparently made some effort at securing employment, which might have allowed her to address her housing situation, but given the significant failures in other areas, the court did not err in finding her unfit.

¶ 25    After a finding of unfitness, the case proceeds to a hearing on the child's best interests. At this stage of the proceedings, a parent's interest in maintaining the parent-child relationship must yield to the child's need to live in a stable, permanent, loving home. *In re D.T.*, 212 Ill. 2d at 364. To successfully terminate a parent's rights, the State must prove by a preponderance of the evidence that it is in the child's best interests to do so. *Id.* at 365. On appeal, we must decide whether the court's decision is against the manifest weight of the evidence. *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 53.

¶ 26    Here, given the agency's recommendation, Hartman's testimony that Declyn was happy in his current placement and was bonded with his foster mother and that she wanted to adopt him, we cannot say that the court's finding that terminating respondent's parental rights and allowing DCFS to consent to his adoption was in Declyn's best interest was against the manifest weight of the evidence.

¶ 27    Counsel suggests one additional potential issue: whether the court erred in voiding the consent to adoption by Dyer. However, counsel concludes that this issue, too, lacks even arguable merit. We agree.

¶ 28    Counsel first notes that no one raised the issue in the circuit court, resulting in its forfeiture on appeal. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430-31 (2006) (issues raised for the first time on appeal are forfeited). It is doubtful that such an objection would have been appropriate given that, as the circuit court noted, the purpose of the hearing was to decide whether

Declyn's best interests required terminating respondent's parental rights rather than to decide on a specific placement.

¶ 29 In any event, section 10(O) of the Adoption Act provides that a consent to adoption by a specific person "will be void if" DCFS places the minor "with someone other than the specified person or persons." 750 ILCS 50/10(O)(2)(9)(a) (West 2020). Thus, the court's ruling that the consent was void was correct.

¶ 30                                         CONCLUSION

¶ 31 As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 32 Motion granted; judgment affirmed.